## CLARKE v. JONES.

1. **Libel : PLEADING.** It is unnecessary under our statute (Code, § 2681) to set out extrinsic facts showing that the words charged were used in a defamatory sense, but it is sufficient to set out the words themselves, and state the defamatory sense in which they were used.

*Appeal from Kossuth District Court.*

FRIDAY, OCTOBER 25.

THE petition states that "plaintiff, for cause of action against the defendant, states the defendant, J. B. Jones, maliciously and unlawfully wrote and composed the false, scandalous and libelous article hereinafter set forth, which article was by the defendant caused to be published in an issue of the *Algona Republican*, a weekly newspaper published at Algona, Kossuth county, Iowa, of general circulation, November 1, 1876, tending to provoke plaintiff to wrath, expose him to

public hatred, contempt and ridicule, and to deprive him of the benefit of public confidence and social intercourse; said article being in words and figures following, to-wit:

'THAT SPONTANEOUS NOMINATION.

'MESSRS. EDITORS: The *Upper Des Moines* has taken a great deal of pains in its two last issues to inform its readers that the county convention was not organized in the interest of A. D. Clarke to secure his nomination for recorder. The fact that the *Upper Des Moines* makes a defense of the convention before any attack made, is itself suspicious. If it was not a "put-up job" why does the *Upper Des Moines* show such anxiety about the matter? Again, if not a put-up job, how is it that the *Upper Des Moines* of the 19th says of the nomination of the convention—"as we predicted?" How was it also that on the 12th, before the convention, the same paper gave Mr. Clarke an exaggerated puff as to what he did at the tax sales? Again, how was it, if not organized in the interest of Mr. Clarke to secure the nomination for recorder, that his partner was elected chairman of the Algona caucus; that his partner appointed the committee to make nominations from among the most intimate friends of Mr. Clarke; that this committee appointed by Mr. Clarke's partner appointed a delegation of Mr. Clarke's friends; that this same partner of Mr. Clarke was made chairman of the Algona delegation; that in the convention this same partner was elected by his own appointed delegation as chairman of the convention; that as such chairman Mr. Clarke's partner appointed the committee on credentials and permanent organization; that the first committee recommended, for townships not represented, Mr. Clarke's personal friends as representatives; that this same partner was elected by a convention, thus made up, its permanent chairman? How was it, also, if not a put-up job, that Mr. Clarke received the support of the whole Algona delegation, being eleven of the twenty-one votes in the convention, as fixed by Mr. Clarke's partner's committee on

credentials, and of only three others, and those three recommended by the same committee on credentials? How was it that Mr. Clarke was nominated on the first ballot, and Mr. Smith for supervisor, when there was no put-up job, although an Algona man also, was not nominated until the fourth ballot? Oh, no! the convention was not organized in the interest of Mr. Clarke to secure his nomination for recorder; not a bit of it. But, however he gained his nomination, what claim has he on his merits upon the people of this county? He has lived here about ten years, and is "well known"—too well known, I think, to get their votes for recorder. They are, indeed, pretty "*familiar*" with his "business capacity" and "honored worth," and they have expressed their opinion of both by defeating him every time but one that he has run for office, and that hasn't been seldom. Then he run for county surveyor with no opposing candidate, and then was almost defeated by not getting votes enough to elect him, which office he was compelled to resign because of his incompetency. His "business capacity" has been shown chiefly in swapping horses and jumping homestead claims, and selling them over again.

'At the recent tax sales his strong desire to serve the interest of the county (which the *Upper Des Moines* parades before its readers) by running up the taxes of hard-working, honest men, who have done more to develop Kossuth county in one year than this chronic office-seeker has ever done, ceased when the interest of his particular friends came up, and he allowed their property to be bid off for a small pittance. We submit, Messrs. Editors, that Republicans are not bound even in this presidential year to stand by nominations made in this way, and of such men, who have no claims upon the franchises of the people.

'A' REPUBLICAN.'

—"Meaning and intending thereby to charge and say, and to be understood as charging and saying, that plaintiff was a man of bad moral character, that he was a thief and trick-

ster, that he was well known as a man of bad character, that he had run the taxes of hard-working, honest men up at the tax sales, for the purpose of getting the advantage of and distressing the poor, and that he was not entitled to public confidence."

The defendant moved to strike out the innuendoes, or that portion of the petition which attached a meaning to the alleged libel, or that stated the defamatory sense of the words used. This motion was sustained, and the plaintiff appeals.

*Geo. E. Clarke*, for appellant.

*Pitt Cravath*, for appellee.

SEEVERS, J.—The appellee claims that the matter stricken out constituted, under the old forms of pleading, the innuendo, and that it cannot enlarge the meaning of the words. It is also insisted that this is true under our statute. Under the common law form of pleading the meaning or defamatory sense of the words was to be ascertained from the words themselves, the colloquium, and the extrinsic matters alleged in the pleading.

1. LIBEL: pleading.

The innuendo could point or fix the meaning of the words, but never enlarge it. If the words in their ordinary sense were not defamatory, but were in fact so used, the extrinsic matter showing they were so used should be stated in the pleading; and it was the office of the innuendo to point or fix the meaning, being aided therein by the colloquium or extrinsic matters pleaded. Certain it is, we think, the petition under consideration does not contain a sufficient statement of a cause of action at common law. It remains to be seen whether it is sufficient under the statute.

The Code provides: "In an action for slander or libel it shall not be necessary to state any extrinsic facts for the purpose of showing the application to the plaintiff of any defamatory matter out of which the cause of action arose, or that the matter was used in a defamatory sense; but it shall

Clarke v. Jones.

be sufficient to state the defamatory sense in which such matter was used, and that the same was spoken or published concerning the plaintiff." Section 2681. There is no substantial difference between this section and the Revision, § 2928, which was construed in *Kinyon v. Palmer*, 18 Iowa, 377. In that case a demurrer was interposed to the third and ninth counts of the petition, which was sustained by the court below. There was no averment in the third count that the words were used in a defamatory sense, and it was held the demurrer was properly sustained. In the ninth count the defamatory sense of the words was stated, and it was held the demurrer thereto should not have been sustained. We understand the ruling in *Kinyon v. Palmer* to be, that as it is unnecessary to state a colloquium or any extrinsic matters in the petition, and the defamatory sense in which the words were used must be set forth. The necessary colloquium or extrinsic facts to support the defamatory sense alleged, or in aid thereof, is a question of proof and not of pleading.

It is sufficient for the pleader, so far as the question before us is concerned, to set out the words and the defamatory sense in which used. If this be true, it logically follows that the petition in the case at bar cannot be assailed as defective; for until the plaintiff has introduced his testimony it is impossible to tell whether the words were used in the defamatory sense alleged or not. See, also, *Swearingen v. Stanley*, 23 Iowa, 115.

REVERSED.